UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | |
| Joseph S. Beale, | ) | Case No: 04 B 08748 |
| | ) | |
| Debtor. | ) | Honorable Bruce W. Black |

### Memorandum Opinion

This case is before me on the motion of Revolution Portfolio, LLC ("Revolution") for allowance of an administrative expense claim ("Revolution's Motion").

### I. Jurisdiction

Jurisdiction lies pursuant to 28 U.S.C. §§ 157(a) and 1334(b) and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

### II. Issue

The only question before me is whether Revolution shall be allowed an administrative expense claim for the actual and necessary expenses incurred during its efforts to locate property concealed by the Debtor. The Bankruptcy Code[1] allows for such a claim, but only for a "creditor that recovers, *after the court's approval,* for the benefit of the estate any property transferred

---

[1] 11 U.S.C. § 101 ff. Any reference to "section" is a reference to the Bankruptcy Code unless another reference is stated.

1

or concealed by the debtor..." Section 503(b)(3)(B) (emphasis added). The parties agree that property which had been concealed by the debtor was recovered for the benefit of the estate.[2] The question is whether Revolution satisfies the other two requirements of section 503(b)(3)(B): (1) does Revolution qualify as a "creditor that recovers"? and (2) what effect does the phrase "after the court's approval" have on its claim? Revolution also argues that section 503(b)(3)(B) is merely illustrative and not an exhaustive list of circumstances in which administrative expenses may be granted to a creditor.[3] Finally Revolution makes a public policy argument.[4] Although other courts have addressed these issues, this appears to be a case of first impression in the Seventh Circuit. I will address each of these issues in turn.

### III. Facts

The relevant facts are not complicated and are, for the most part, uncontested. On March 5, 2004, Revolution and three other creditors filed an involuntary petition for relief against the Debtor under chapter 7. As of the petition date, Revolution was a partially secured judgement creditor of the Debtor with a claim

---

[2] Much of the $7.2 million recovered by the trustee resulted from the "liquidation of assets in which the debtor had concealed his true interest or transferred his interest to third parties." Revolution's Motion p.6 ¶17.

[3] Revolution's Reply p.3 ¶4-5.

[4] Revolution's Motion p.9 ¶26.

in the amount of $7,300,000. On April 5, 2004, an order for relief was entered, and a trustee was appointed to administer the chapter 7 bankruptcy estate. On May, 5 2004, a motion by the trustee to employ Freeborn & Peters, LLP as special counsel was denied. Freeborn & Peters, as counsel for Revolution, had conducted investigations into the Debtor's finances prior to the petition date. Freeborn & Peters continued to act as counsel for Revolution after the petition date. Between the petition date and August 31, 2004, Revolution incurred legal fees and expenses of over $1 million.[5] The efforts of Revolution were significant in assisting the trustee to recover several million dollars for the estate from assets transferred by the Debtor. On April 5, 2006, a settlement agreement was approved, pursuant to which the trustee was able to recover a minimum of $7,200,000 for the estate.[6]

The trustee supports Revolution's Motion and agrees that the information provided by Revolution and its counsel "proved valuable" in the negotiations with the Debtor and in the settlement agreement that was eventually reached.[7] As part of the settlement reached between the trustee and Revolution, the trustee agreed to support Revolution's administrative claim

---

[5] Pursuant to a settlement agreement, Revolution is only seeking $575,000 as an administrative expense.

[6] The exact figure may increase if the trustee is able to liquidate other assets.

[7] Maxwell Response ¶ 13.

3

request to the extent of $575,000. Only the United States Trustee has objected to Revolution's Motion.

## IV. Discussion

Section 503(b)(3)(B) reads as follows:

> After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including –
> (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by –
> (B) a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor;

### 1. Whether Revolution qualifies as a "creditor that recovers"

Although not addressed in depth by any party, the interpretation of the language "a creditor that recovers" is pertinent to the issue at hand. Revolution argues that it is not fatal to its claim that it was the trustee, and not Revolution, that actually recovered the property. In support of its position it points to two cases. In *In re Maghazeh*, 315 B.R. 650, 563-55 (Bankr. E.D. N.Y. 2004), the court awarded the United States an administrative claim for expenses incurred in uncovering assets for the estate. Revolution argues that *In re Maghazeh* is on point because "the bankruptcy trustee – and not the creditor – actually recovered the transferred or concealed property."[8]

---

[8] Revolution's Reply p. 5-6 ¶ 10.

4

While it may be true that the trustee in *In re Maghazeh* was the party that actually recovered the property, the court did not address the requirement of section 503(b)(3)(B) that the creditor be the one who recovers. The second case relied upon by Revolution is *In re Rumpza*, 54 B.R. 107 (Bankr. S.D. 1985). This case also fails to address this requirement in any depth. The only reference of the fact that the trustee, and not the creditor, recovered the property is found in the following passage:

> Although the trustee followed up on these leads and negotiated a settlement with the debtor, [the creditor's] efforts were instrumental in the discovery of the assets for the estate. Although [the creditor] did not obtain prior court approval, efforts such as these by creditors on behalf of the estate and resulting in a benefit to all creditors should be encouraged, and the Court will not deny him compensation on that basis. *In re Rumpza*, 54 B.R. at 109.

The court cites no authority and, beyond the quote above, makes no mention of section 503(b)(3)(B).

The case cited by the United States Trustee in opposition to Revolution's Motion does confront this issue. The court in *In re Blount*, 276 B.R. 753, 760-61 (Bankr. M.D. La. 2002), interprets section 503(b)(3)(B) as requiring the court's approval in order to become a "creditor that recovers." I agree with the court's reasoning. In the ordinary chapter 7 case, the trustee is the only party with standing to recover property transferred or

concealed by the debtor. Section 503 allows the court to confer standing on another party, such as a creditor, to recover property that has been concealed or transferred, but a creditor that does not receive derivative standing from the court cannot act on behalf of the estate. I conclude that a party that cannot act on behalf of the estate cannot be a "creditor that recovers" under section 503(b)(3)(B).

### 2. The meaning of "after the court's approval"

Whichever interpretation of "a creditor that recovers" is adopted, the determinative issue here is the meaning of "after the court's approval." Whether this court considers "a creditor that recovers" to be an issue of standing, or merely a reference to a creditor whose actions have led to the recovery of property, the issue of prior court approval is critical.

On its face section 503(b)(3)(B) seems to clearly require prior court approval as a prerequisite to the allowance of an administrative expense, but Revolution is able to point to some case law from other circuits that support its position.[9] These cases generally take the equitable position that it would be unfair to not reimburse the creditor its expenses for actions that were so beneficial to the estate. The courts in these cases

---

[9] *See e.g. In re Antar*, 122 B.R. 788 (Bankr. S.D. Fla. 1990) (attorneys fees awarded to a creditor who commenced complaint objecting to discharge which was subsequently joined by the trustee, even though prior court approval was not obtained); *In re Romano*, 52 B.R. 590 (Bankr. M.D. Fla. 1985) (reasonable attorney fees were permitted to creditor's attorney under § 503(b)(4) when the services substantially contributed to the estate); *In re George*, 23 B.R. 686 (Bankr. S.D. Fla. 1982) (court retroactively approved payment to creditor as an administrative claim under § 503(b)(3)(B) when the services resulted in substantial recovery to the estate).

have granted retroactive or *nunc pro tunc* approval as a way to satisfy section 503(b)(3)(B). In the instant case, however, I already denied a motion to appoint Freeborn & Peters as special counsel. Revolution is now, for all intents and purposes, attempting to circumvent that order.

The majority of courts that have dealt with this issue have adopted a plain meaning approach to section 503(b)(3)(B) and denied administrative expenses sought by creditors that did not have prior court approval.[10] At no point in the written or oral arguments could Revolution or the bankruptcy trustee provide a logical rationale for ignoring the plain meaning of section 503(b)(3)(B). I agree with the plain meaning interpretation of this section and find that it does not allow for administrative expenses in this case.

### 3. Whether §503(b)(3)(B) is an exhaustive list

Revolution also argues that even if its claim does not fall into one of the categories of allowed administrative expenses of section 503(b), its claim should still be allowed because the word "including" renders the following categories illustrative and not exhaustive. In making this argument, however, Revolution

---

[10] *See e.g. Xifaras v. Morad (In re Morad)*, 328 B.R. 264 (B.A.P. 1st Cir. 2005) (denying retroactive approval to § 503(b)(3)(B) administrative expenses absent "extraordinary circumstances" for failure to obtain prior court approval); *In re Elder*, 321 B.R. 820 (Bankr. E.D. Va. 2005) (statute's plain language that "a creditor that recovers, after the court's approval" must be strictly followed in accordance with the provision's policy); *In re Blount*, 276 B.R. 753, 758, n.17 (declining to decide whether court approval can be granted retroactively, but suggesting in dicta that the plain meaning of § 503(b)(3)(B) requires prior court approval).

simply ignores the subsection of section 503(b) requiring court approval for administrative expenses when a creditor recovers for the benefit of the estate. I agree with the statement in *In re Elder*, 321 B.R. 820, 829 (Bankr. E.D. Va. 2005) that "[w]hen a subsection directly addresses the type of administrative expense sought, the restrictions in it cannot be avoided by appealing to the non-exclusive nature of § 503(b)." Since the general language of section 503(b) is limited by subsection (3)(B), the restricting language of the subsection must prevail. Had Congress not intended such a result when enacting section 503(b)(3)(B), it would not have required court approval in the language of the statute.

This view is supported by the history of the section. Section 64 of the Bankruptcy Act of 1898 previously allowed creditors to recover administrative expenses incurred in recovering property of the bankruptcy estate. Section 64 did not require prior court approval. When section 64 of the Act was recodified into section 503 of the Code, Congress deliberately added the language of the statute requiring prior court approval, apparently to ensure that the costs were reasonable and that the efforts were necessary and not repetitive. The general rule is that changes in statutory language show Congress' intent to depart from the old law.[11]

---

[11] *See Shamrock Oil & Gas Co. v. Sheets*, 313 U.S. 100 (1941).

Because Revolution's situation is expressly addressed by section 503(b)(3)(B), I will not ignore the express language of the code and create, in essence, another category of allowable administrative expenses for creditors that recover *without* court approval.[12]

Nor do I find persuasive any of the policy arguments presented by Revolution. I do not believe that denying Revolution's Motion will "have a chilling effect upon creditor participation within a bankruptcy proceeding."[13] Instead, adhering to the plain meaning of section 503(b)(3)(B) will result in bankruptcy proceedings which are more orderly and in which the role of the chapter 7 trustee will be protected. This holding will also prevent over-eager creditors from duplicating the work of the trustee and then looking to the court for administrative expense claims.

## V. Conclusion

Although I recognize that the efforts of Revolution in this case were immensely helpful to the trustee in recovering a large amount of property for the benefit of the estate, I conclude that the proper decision is to deny the motion.

---

[12] To do so might very well constitute an impermissible reordering of priorities. *See In re Kmart Corp.*, 359 F.3d 866, 871 (7th Cir.) (*cert. denied*, 543 U.S. 986 (2004)) ("[t]he fact that a [bankruptcy] proceeding is equitable does not give the judge a free-floating discretion to redistribute rights in accordance with his personal views of justice or fairness, however enlightened those views may be.")(quoting *In re Chicago, Milwaukee, St. Paul & Pacific R.R.* 791 F.2d 524, 528 (7th Cir. 1986.))

[13] *In re Antar*, 122 B.R. 788, 791.

9

For the above reasons, Revolution's Motion will be DENIED.

A separate order will be entered.

DATE: Oct. 16, 2006

ENTERED:

/s/ Bruce W. Black
Bruce W. Black
Bankruptcy Judge